THOMAS L. H. CREIGHTON & others *vs.* FRANKLIN PROCTOR.

Under the general issue in a real action, the tenant cannot specify and rely upon a claim of title in himself, and also upon the defence of non-tenure.

A conditional judgment in a writ of entry on a mortgage, followed by fifty years quiet and peaceable possession by the mortgagee, is sufficient evidence of an absolute title in the latter, without proof that possession was ever delivered to him under such judgment by legal process.

THIS action was tried in this court, February term, 1853, before *Thomas,* J., who reported the same for the whole court. The nature of the case, and the points involved, sufficiently appear in the opinion.

*S. Bartlett,* for the demandants.

*G. M. Browne & J. F. Woodside,* for the tenant.

SHAW, C. J. This was a real action, brought to recover a tract of land, of about five acres, in Roxbury, and the general issue was pleaded. The tenant, in his specification of defence, filed with the general issue, gave notice that he would deny, and require the demandants to prove their title to the demanded premises, and would claim title in himself, as one of the heirs of Samuel Bills.

The demandants claimed title under a mortgage made by Samuel Bills to their ancestor, Thomas Lloyd Halsey, and for that purpose put in evidence the record of a conditional judgment recovered by said Halsey against said Bills, on said mortgage, at the February term of the supreme judicial court for Suffolk, 1786, including the premises demanded, and another parcel of land. The county of Norfolk was then a part of the county of Suffolk, and the land of course lay in Suffolk. It appeared that a writ of *habere facias* issued, which was executed by delivery of seisin and possession of the other part of the premises to Halsey ; that an *alias* and *pluries habere facias* were issued, the last of which was in July, 1787, which does not appear to have been returned ; and there is no direct evidence to show whether it was ever executed or not.

The demandants offered evidence to show that Thomas L.

Halsey made a will, which was proved in Rhode Island in 1838, a copy of which was duly filed in the probate court of this county, according to the statute, in 1852. It further appears that, by a residuary clause of his will, the testator devised his estate to his children named, in equal shares, in terms sufficient to pass all his real estate in this county; that Mrs. Creighton, one of the said children, was the mother of these demandants, through whom and by deeds of the various devisees, a good title to the premises has been derived to the demandants, if the said Thomas L. Halsey died seised thereof. The question therefore is, whether said Thomas L. Halsey, the testator, had such legal title and seisin at the time of his decease.

It appears from the record of the above judgment, that the late Hon. Fisher Ames was the attorney of record of Halsey in obtaining said judgment, and, as his attorney, received seisin and possession of that part of the recovered premises upon which the *habere facias* was executed.

The demandants also offered the testimony of James Richardson, Esq., that, in 1800, he went into partnership with Mr. Ames, in the law business; that, in connection with Mr. Ames, and as the attorney and agent of Halsey, the judgment creditor, he took charge of the said premises; that they were then in possession of a tenant, whose rent was in arrear; he testified that he recovered the back rent of this tenant, and got him out in 1801, from which fact it appears that he was in as the tenant of Mr. Halsey, to whom Mr. Richardson accounted for the rent thus recovered. He further testified that he took charge of the land, visited it many times, always once a year, let to several tenants successively, received the rents, and accounted for them to Mr. Halsey and his successors, until 1850, when the tenant Proctor entered on the land, claiming title, and took possession of it. His testimony is fully stated in the report, but it seems not necessary to repeat it in detail.

Evidence of his descent from Samuel Bills was put in by the tenant; but he offered no other evidence. The counsel for the tenant, in his argument, says that he could have given

much more evidence upon the subject of possession, "if he had been permitted." We do not perceive, by the report, that he was restrained from giving any other evidence on the subject of title or possession, or that any other evidence was offered upon that subject. But it does appear, that the presiding judge inquired of the counsel for the tenant if he intended to rely on the specification of non-tenure, and intimated to the counsel that he could not do so, and at the same time rely upon the specification of title in himself, under the general issue ; that, under the specification of title, the defence of non-tenure was not open to him ; and that, on the evidence and pleadings, the verdict should be for the demandants. By this opinion, we understand the judge did not intend to say that, upon the whole case, the verdict must be for the demandants, but that if, by his pleading and evidence, the tenant claimed title, and intended to go to the jury upon that claim, such claim was, in law, a waiver of the defence of non-tenure ; and upon that ground, as matter of law, the jury could not render a verdict for the tenant. The judge did not in that stage of the trial, express any opinion upon the evidence, and direct that the verdict should be for the demandants upon the question of title.

It appears by the report, that, upon this intimation from the court, of its opinion, a verdict was taken for the demandants by consent, the counsel, however, for the tenant, stating that he relied on both specifications. "If," continues the report, "upon the pleadings, specification of defence, and the evidence, the court shall think the verdict should be set aside, then a new trial is to be ordered, otherwise judgment on the verdict."

1. The first question upon the pleadings and evidence thus reported and submitted to the full court, is, whether the demandants proved any title ; and this again depends on the point, as before stated in the introduction to this opinion, whether they have satisfactorily proved a valid title in Thomas Lloyd Halsey, ancestor of the demandants, under whom they claim. For this purpose, they have given in evidence a judgment of this court, rendered in 1786, in favor of said Thomas

L. Halsey, against Samuel Bills, the ancestor of the tenant and the other heirs whom he represents. This was a judgment on a mortgage of the premises made by said Bills to Halsey, and an averment of a breach of the condition. In fine, it was a writ of entry by Halsey, averring a breach of the condition, seisin in himself and a disseisin by the tenant. The conditional judgment, as in case of a mortgage, was rendered, and, after the expiration of the two months, a *habere facias*, in pursuance of the judgment, for the premises and one other parcel of land embraced in the same judgment, was issued. This writ of *habere facias* was executed, and under it seisin and possession were delivered to Halsey of the " other parcel," but it was returned unsatisfied as to the parcel which is the subject of this action. An *alias* and *pluries* execution were taken out, but the latter was never returned.

This judgment was a direct adjudication, by a court of competent jurisdiction, in favor of Halsey against Bills, on the question of legal title, and conclusive evidence of such legal title against Bills and all persons claiming title under him. The issuing of the *habere facias* shows that the mortgage debt was not paid, conformably to the condition of the judgment, within the two months ; and, after that, whatever right Bills had was a right in equity to redeem. Until an actual redemption, he could not legally question the title of Halsey.

But it is argued by the counsel for the tenant that the demandants show no record or paper-title, and that no mortgage was ever proved. If he merely intended to say that no mortgage deed was given in evidence, that is true ; but to say that no mortgage was proved, is not correct. No mortgage deed was necessary, or would have been proper. The mortgage title by deed was merged in the mortgage title by judgment which is proof of a higher nature, and supersedes the deed.

Reliance seems to be placed, in the argument, upon the fact that no *habere facias* seems to have been executed, by which seisin was delivered of this parcel. It may be remembered, in passing, that the contrary does not appear. All that does appear is, that a *pluries* writ of *habere facias* was issued

which was not returned. It may or may not have been exe-
cuted. Upon this point it is only necessary to say that the ser-
vice of a *habere facias* is not necessary to perfect or complete
the title evidenced by the judgment. It is a convenient pro-
cess to enable a party having a judgment in a real action to
avail himself of the power of the law to obtain a lawful and
peaceable entry and possession under his judgment title. It
adds nothing to the strength of such title.

But it is further argued, that the probability is, from lapse
of time and the conclusive presumption of law, that the judg-
ment was paid and satisfied; and, in support of this propo-
sition, the tenant relied on Rev. Sts. *c.* 120, § 24. There
would be much force in this argument, if there had been no
entry upon the land by the judgment creditor, and especially
if the mortgagor had remained in possession. *Howland* v.
*Shurtleff*, 2 Met. 26.

2. Then the question is, as to the proof of such entry.
The record shows that Mr. Ames was the attorney of Halsey
in obtaining judgment, and in his behalf received seisin of
the other part of the premises embraced in the same judg-
ment. In 1800, Mr. Richardson went into partnership with
Mr. Ames, and, at his and Halsey's request, took charge of
the estate for Mr. Halsey, found one Withington in as the
tenant of Halsey, recovered of him arrears of rent, and ac-
counted for it to Mr. Halsey. This is evidence tending to
show, and competent for that purpose if believed and not con-
troverted, that Halsey, by his tenant, was in possession, taking
the rents and profits, some time prior to 1800. If he was then
in possession, he had entered peaceably, either under the *ha-
bere facias* not returned, or *in pais;* and, in either case, his
entry and possession must be referred to his right of entry,
which was the judgment. This rebuts any presumption that
the debt was paid.

The testimony of Mr. Richardson further tends to show
that such possession of Halsey, and those who came in under
him, continued by their attorney and by various tenants until
1850. The letter of Proctor, the tenant, of July 1, 1850, ad-
dressed to Leonard Hyde, the last of those tenants, shows

37 *

that he had taken possession of the estate called the Halsey land, conceded to be the premises sued for in this action, for the heirs of Samuel Bills. This carries a clear implication that, until he had so taken possession, those heirs were out of possession.

3. The counsel for the tenant still insist on their exception taken at the time, to the opinion given by the judge, that they could not go to the jury on both specifications, viz: title in the tenant and non-tenure. The point is not whether, in a real action, the tenant may, under a *nul disseisin*, file a specification of non-tenure, and give that defence in evidence. No doubt, since the act of 1836, abolishing special pleading, he may do so, because *nul disseisin* is regarded as a general issue; and, before the statute, non-tenure might be pleaded in bar, and by that act, all matters in bar of the action might be given in evidence under the general issue.

It is more questionable whether both can be specified under the same plea of the general issue, or rather, whether the assertion of title in himself, in one clause of his specification, does not *de facto* negative the averment of non-tenure in the other. But supposing he might safely insert both in his specification, so as to give him an election on which to rely, which is doubtful, it seems very clear that when the trial commences, he must make that election.

What is the ground of the plea? The demandant, in a writ of entry, seeks to recover of the tenant a freehold estate. The tenant may plead, I hold no such freehold estate, and cannot render it, *non dat qui non habet.* In effect he says : " I am unjustly brought into court; I have no claim to any estate of freehold in the demanded premises, and do not contest the demandant's title, and ought not to be troubled with this suit." If this is true, and he has done no acts amounting to a claim of ownership in fee, he is entitled to a judgment for costs. But such plea is an admission of record that, so far as he and those claiming under him are concerned, the demandant may enter upon the land as his own estate in fee or in freehold, and hold it forever.

This was no case of special non-tenure, as a plea to that

effect would have been denominated under the practice of special pleading ; as where a tenant in a real action may say that he did not hold, or claim to hold, any estate in freehold, but that the acts of possession and ownership which he had done, or had a right to do, on the land, were done in pursuance of some right other than that of owner in fee, such as that of a lessee for years or at will, or a licensee or servant of another, or as having a mere easement. On the contrary, by the terms of the specification, he states that, under the general issue, he will deny the demandants' title, and will claim title in himself as one of the heirs of Bills. The claim of title by inheritance is necessarily and technically a claim of a title in fee. If the mere insertion of this claim of title in the specification did not itself overrule the plea of non-tenure, any evidence offered to the jury to sustain it would do so. This is not a mere question of form, but of principle. If the tenant could go to the jury on both grounds of defence to the action, as in ordinary cases of two or more matters of defence not repugnant to each other, he could not in the present case, because a verdict for the tenant would be equivocal, and would leave it entirely uncertain whether the jury, upon the evidence, found the tenant had the better title, or had and claimed to have no title at all. It would afford no ground for a judgment settling the rights of the parties upon the matter in controversy. The court are, therefore, of opinion, that the direction of the judge at the trial, that the claim of the tenant to go to the jury on the issue of title, in point of law overruled his claim to a verdict on the specification of non-tenure, was right.

The question of title having been submitted to the court upon the evidence reported, we are of opinion, upon the grounds hereinbefore stated, that the demandants have a good title, and therefore there must be

*Judgment on the verdict for the demandants.*